**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

```
_____
                              :
KEITH KOONCE a/k/a KYEM SADAT, :
                              :        Civil Action
          Petitioner,         :        No. 05-5068 (JLL)
                              :
     v.                       :        O P I N I O N
                              :
RONALD CATHEL et al.,         :
                              :
          Respondents.        :
_____:
```

**APPEARANCES:**

        KEITH KOONCE a/k/a KYEM SADAT
        #244598/SBI 723607-B
        New Jersey State Prison
        Trenton, New Jersey  08625
        Petitioner Pro Se

        PAULA T. DOW, Essex County Prosecutor
        SARA A. FRIEDMAN, Assistant Prosecutor
        Essex County Courts Building
        Newark, New Jersey  07102
        Attorney for Respondents

**JOSE L. LINARES, District Judge**

        Petitioner KEITH KOONCE a/k/a KYEM SADAT (hereinafter
"Petitioner") filed a Petition for a Writ of Habeas Corpus
(hereinafter "Petition") challenging his conviction pursuant to 28
U.S.C. § 2254(a).  Respondents filed an Answer (hereinafter
"Answer") and the state record seeking dismissal of the Petition on
the merits and for failure to state a federal claim.

        For the reasons expressed below, the Court denies the Petition
and declines to issue a certificate of appealability.

## BACKGROUND

Petitioner challenges a judgment of conviction entered in the Superior Court of New Jersey, Essex County, on January 27, 1997, after a jury found Petitioner guilty of felony murder, aggravated manslaughter, terroristic threats, robbery, conspiracy to commit robbery, aggravated assault, endangering the welfare of a child, and possessions of a weapon without a permit and for an unlawful purpose. See Pet. ¶¶ 1-4, Ans. ¶ 3. Petitioner was sentenced to life imprisonment with a 30-year period of parole ineligibility. See id. ¶ 3. Petitioner appealed, and on June 15, 1999, the Superior Court of New Jersey, Appellate Division, affirmed his conviction. See id. ¶ 9, Ans. ¶ 9. The New Jersey Supreme Court denied his petition for certification on November 5, 1999. See id.

Petitioner also filed a pro se petition for post-conviction relief, which the Superior Court of New Jersey, Law Division, denied on December 23, 2003. See Cert. of [Petitioner] in Support of Order to Show Cause ¶ 11. The Appellate Division affirmed the denial on April 22, 2005, and the New Jersey Supreme Court denied Petitioner's petition for certification on September 12, 2005. See id. ¶¶ 8-9.

On October 19, 2005, Petitioner executed the instant § 2254 Petition. The Clerk received it on October 25, 2005, with Petitioner's affidavit of poverty in support of his application to proceed in forma pauperis. The Court notified Petitioner of the

2

consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act, and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). Finally, on August 3, 2006, Petitioner filed a motion for an evidentiary hearing.

Petitioner raises numerous grounds which can be roughly subdivided into the following five categories of claims:

(I)     Claims related to testimony of Victor Parker, a state witness (hereinafter "Witness"). These claims are reflected in Petitioner's Grounds One to Four.

(II)    Claims attacking Petitioner's sentence and reflected in Petitioner's Grounds Seven to Nine.

(III)   Claim related to the prosecutor's summation. This claim is reflected in Petitioner's Ground Five.

(IV)    Claim attacking the jury verdict delivered in Petitioner's underlying case. This claim constitutes Petitioner's Ground Six.

(V)     Claims alleging ineffectiveness assistance of counsel. These claims are stated in Petitioner's Grounds Ten to Nineteen.

See Pet., Addendum II at 2-33.

The specifics of all of Petitioner's contentions are detailed infra as part of the "Discussion" section of this Opinion.

3

## STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code grants federal district courts subject matter jurisdiction to entertain a claim that a state prisoner is in custody in violation of the Constitution, laws or treaties of the United States.   Section 2254(a) provides, in pertinent part:

> . . . a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

A habeas corpus petition must meet "heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254, Rule 2(c)).  The petition must "specify all the grounds for relief which are available to the petitioner," and set forth "the facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing Section 2254 Cases.

Significantly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Barry v. Bergen County Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997), cert. denied, 522 U.S. 1136 (1998).  A federal district court must dismiss a habeas corpus petition, summarily or otherwise, if it

4

does not assert a constitutional violation.  <u>Siers v. Ryan</u>, 773 F.2d 37, 45 (3d Cir. 1985), <u>cert.</u> <u>denied</u>, 490 U.S. 1025 (1989); Rule 4 of the Rules Governing Section 2254 Cases.[1]  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable.  It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts."  <u>Engle v. Isaac,</u> 456 U.S. 107, 120 n.19 (1982).  A district court is not permitted to transform a ground asserting a violation of state law into a ground raising a violation of the federal Constitution.[2]  Nor may the court consider a federal claim

---

[1]

Rule 4(c) provides:  "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."  The Advisory Committee Notes to Rule 4 emphasize that "'notice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" (citing <u>Aubut v.  Maine</u>, 431 F.2d 688, 689 (1st Cir. 1970)).

[2]

<u>See</u> <u>also</u> <u>Engle</u>, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights, and § 2254 was inapplicable); <u>Kontakis v. Beyer</u>, 19 F.3d 110, 116-17 & n.10 (3d Cir.), <u>cert</u>. <u>denied</u>, 513 U.S. 881 (1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

that can be discerned from the facts of the case but is not asserted in the petition as a ground.[3]

Furthermore, in its examination of a claim, a district court must give deference to determinations of state courts. Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002); see also 28 U.S.C. § 2254(e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Where a federal claim was "adjudicated on the merits" in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application

---

[3]

See also Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, the district court may not consider ground, evident from the facts but not raised in the petition, that counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*.

28 U.S.C. § 2254(d) (emphasis supplied).[4]

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a [different] result." <u>Rompilla v. Horn</u>, 355 F.3d 233, 250 (3d Cir. 2004) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

---

[4]
"An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." <u>Rompilla v. Horn</u>, 355 F.3d 233, 247 (3d Cir. 2004) (quoting <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311 (2d Cir.2001)). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever. <u>Rompilla</u>, 355 F.3d at 247. However, if an examination of a state court opinion reveals that the state court did not decide a federal claim on the merits, the standards of review set out in § 2254(d)(1) do not apply. <u>Id</u>. at 248.

case." <u>Williams</u>, 529 U.S. at 413.  Whether a state court's application of federal law is "unreasonable" must be judged objectively; therefore, an application may be incorrect yet still reasonable.  <u>Id</u>. at 409-10.

Lastly, although Petitioner did not present certain grounds to the New Jersey courts on direct appeal or in his petition for post conviction relief and the claims are not exhausted, this Court will not dismiss the Petition as a mixed petition because none of these grounds presents a colorable federal claim.  <u>See</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); <u>Lambert v. Blackwell</u>, 134 F.3d 506, 515 (3d Cir. 1997) (district court may deny an unexhausted petition on the merits under § 2254(b)(2) "if it is perfectly clear that the applicant does not raise even a colorable federal claim.").

<u>**DISCUSSION**</u>

I.  <u>**Claims Related to the Witness' Testimony**</u>

   a.  ***Grounds One, Two and Three: Petitioner's Cross-examination of the Witness***

In his first three grounds, Petitioner sets forth interrelated claims challenging the restrictions applied by Petitioner's trial court to Petitioner's cross-examination of the Witness.  <u>See</u> Pet., Addendum II at 2-4.  Specifically, Petitioner asserts as follows:

The [trial] court's restriction on [Petitioner's] ability to cross-examine [the Witness] deprived [Petitioner] of a fair trial. [T]he [trial] Court improperly restricted [Petitioner's] ability to cross-examine [the Witness] when [the Court] precluded any inquiry into the facts of the cases which were dismissed by the cooperation agreement [between the Witness and the State].[5] The Court set forth three reasons for precluding [this inquiry]: unfairness to [certain parties whose] cases . . . were dismissed; undue consumption of time; and . . . lack of probative value.

Id. at 2 (Ground One).

[Petitioner's] ability to engender a reasonable doubt was [therefore] unduly restricted by the [trial] court. It is unfortunate that the [trial] Court was more concerned with potential prejudice to . . . [other parties] than to [Petitioner when the Court restricted cross-examination of the Witness]. In [a complex case] such as [that of Petitioner's], issues of undue consumption of time and jury confusion are not particularly weighty.

Id. at 4 (Ground Three).[6]

The precluded evidence [should have been allowed since it] was admissible [under the State law]. The dismissed [cases] against [the Witness] constituted . . . evidence [admissible] pursuant to N.J.R.E. 404(B).

Id. at 3 (Ground Two).

Petitioner's claims are without merit.

---

[5]
These cases apparently involved other crimes committed by the Witness and some of Petitioner's co-defendants. It is not entirely clear from the record whether Petitioner took part in the events underlying these dismissed cases.

[6]
Since Petitioner's Ground Three contention appears to be but an elaboration on Petitioner's disappointment with the trial court's ruling rather than a separate claim, this Court treats Petitioner's Grounds One and Three jointly and designates them as "Ground One/Three."

Petitioner's Ground Two contention is based on state law and, hence, is not subject to review by this Court since, even if Petitioner's contentions are valid, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause," Johnson, 117 F.3d at 110, and "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985). "Before a federal court may overturn a conviction resulting from a state trial . . . it must be established not merely that the [State's action] is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Marshall v. Hendricks, 307 F.3d 36, 64 (3d Cir. 2002) (quoting Smith v. Phillips, 455 U.S. 209 (1982), and citing Cupp v. Naughten, 414 U.S. 141, 146 (1973)); see Siers, 773 F.2d at 45 (a federal district court must dismiss a habeas corpus petition if it does not assert a constitutional violation); Rule 4 of the Rules Governing Section 2254 Cases; see also Engle, 456 U.S. at 120 n.19 ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable.").

Since Petitioner's Petition is silent as to any violations of federal law with respect to Petitioner's Ground Two, Petitioner's

claim based on N.J.R.E. 404(B) is subject to dismissal for failure to state a federal claim.

While Petitioner's Ground One/Three contention makes reference to a federal issue,[7] the constitutional validity of the trial judge's prudential and anti-prejudicial concerns (hereinafter "Judicial Concerns") was established by the state courts during Petitioner's post-conviction relief proceedings, and Petitioner did not make the required objective showing that the Judicial Concerns "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal Law." 28 U.S.C. § 2254(d)(1); <u>Williams</u>, 529 U.S. at 413. The standard established by the Supreme Court of the United States provides that

> [t]he Confrontation Clause . . . guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." . . . [While] "the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination[,]'" <u>id.</u>, at 315-316 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)), . . . [i]t does not follow . . . that the Confrontation Clause prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant. . . . "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the

---

[7]

This Court liberally construes Petitioner's Ground One/Three "lack of fair trial" challenges to refer to the Confrontation Clause.

> defense might wish." <u>Delaware v. Fensterer</u>, 474 U.S. 15,
> 20 (1985) (per curiam) . . . .

<u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 682-83 (1986) (emphasis omitted).

During Petitioner's post-conviction proceedings, the state court found that the actions of Petitioner's trial judge did not violate the above-stated constitutional standard. The Superior Court of New Jersey, Appellate Division, noted that

> [Petitioner] did not claim [that Petitioner] was involved
> with [the Witness] in other [Witness'] offenses . . . ,
> and [Petitioner] did not claim [that the witness] had a
> motive to lie with respect to [Petitioner]. Eliciting
> information about [the Witness'] involvement in other
> crimes with [the Witness'] co-defendants on trial could
> have prejudiced [Petitioner and his co-defendants]. Nor
> does Petitioner suggest how [an] inquiry concerning the
> details of [the Witness'] other crimes would have enured
> to his benefit. [Therefore, the court] find[s] neither a
> constitutional deprivation of the right of confrontation
> nor an abuse of the trial judge's discretion . . . to
> limit the scope of cross-examination.

<u>State v. Koonce</u>, A-3786-96T4 (N.J. Super. Ct. App. Div. June 15, 1999).

In view of these findings, it appears that Petitioner's arguments have no support in federal law and are limited solely to Petitioner's hindsight dissatisfaction with the outcome of his trial. <u>See</u> Pet. Addendum II at 2-4. However, Petitioner's dissatisfaction does not demonstrate any constitutional violation warranting habeas relief. Petitioner failed to show that "the [state] adjudication of [his Confrontation Clause] claim [yielded] the decision that was contrary to, or involved an unreasonable

12

application of, clearly established federal law as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), and Petitioner's Ground One/Three claim will be denied.

### b.   *Ground Four: Trial Judge's Jury Instructions*

Petitioner, in his Ground Four, asserts that:

> The [trial] court's charge was prejudicially defective because it failed to provide any guidance to the jury on how it should assess the issue of [the Witness'] credibility with the fundamental evidential item – the "cooperation agreement" between [the Witness] and the State.[8]

Pet., Addendum II at 5.  Petitioner (1) further elaborates that "not once did the Court mention the cooperative agreement" between the Witness and the State, and (2) submits that the jury charge which stripped all references to the Witness' cooperative agreement impeded the "sole thrust of the defense [which] was the attempt to impeach [the Witness'] credibility because of the benefits [the Witness] enjoyed as a result of the agreement, and to suggest that the agreement engendered the motive for [the Witness] to falsely accuse and identify [Petitioner]." Id.  The record, however, reveals that the trial judge's instructions with respect to the Witness duly addressed the issue.  Specifically, Petitioner's trial judge instructed the jury as follows:

> Now, [the Witness, who is] one of the defendants named in the indictment, has admitted his guilt and testified on

---

[8]

This matter was not exhausted below.

13

behalf of the State.  The law requires that testimony of
such a witness be given careful scrutiny.  In weighing
[the Witness'] testimony, [the jurors] may consider
whether [the Witness] has a special interest in the
outcome of the case, and whether his testimony was
influenced by the hope or the expectation of any
favorable treatment or reward or by any feelings of
revenge or reprisal.  If you believe this witness to be
credible, and worthy of belief, you have a right to
convict [Petitioner] on his testimony alone, provided, of
course, that upon a consideration of the whole case[,]
you are satisfied beyond a reasonable doubt of
[Petitioner's] guilt.

Ans., Ex. 9T15-20 to 9T16-8.

A habeas petitioner who challenges state jury instructions
must "point to a federal requirement that jury instructions on the
elements of an offense . . . must include particular provisions,"
or demonstrate that the jury "instructions deprived him of a
defense which federal law provided to him."  <u>Johnson v. Rosemeyer</u>,
117 F.3d 104, 110 (3d Cir. 1997).  This is because district courts
do not "sit as super state supreme courts for the purpose of
determining whether jury instructions were correct under state law
with respect to the elements of an offense and defenses to it."
<u>Id</u>.  Thus, where a habeas petitioner challenges jury instructions
given in a state criminal proceeding,

the only question for [the federal court] is "whether the
ailing instruction by itself so infected the entire trial
that the resulting conviction violates due process." It
is well established that the instruction "may not be
judged in artificial isolation," but must be considered
in the context of the instructions as a whole and the
trial record. In addition, in reviewing an ambiguous
instruction . . . , [the federal court] inquire[s]
"whether there is a reasonable likelihood that the jury
has applied the challenged instruction in a way" that

14

> violates the Constitution.  And [the court] also bear[s]
> in mind . . . that [the federal courts] "have defined the
> category  of  infractions  that  violate  'fundamental
> fairness' very narrowly." "Beyond the specific guarantees
> enumerated in the Bill of Rights, the Due Process Clause
> has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).

Therefore, the Due Process Clause is violated only where "the [given] instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997), cert. denied, 522 U.S. 1109 (1998).  Moreover, where such a constitutional error has occurred, it is subject to "harmless error" analysis. See Neder v. United States, 527 U.S. 1, 8-11 (1999); Smith v. Horn, 120 F.3d at 416-17 (3d Cir. 1997).  "If the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, . . . the error cannot be deemed harmless." Smith v. Horn, 120 F.3d at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  Consequently, in evaluating a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge. If the charge as a whole is
> ambiguous, the question is whether there is a reasonable
> likelihood that the jury has applied the challenged
> instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

In the case at bar, the instructions given by the trial judge expressly ordered the jurors to question and evaluate the Witness' credibility.  See Ans., Ex. 9T15-20 to 9T16-8.  While the trial judge did not use the exact parlance desired by Petitioner, this does not amount to a constitutional error, since (a) the fact of the Witness' cooperative agreement that led to the Witness' testimony for the State was duly disclosed to the jury, and (2) the instructions given stressed the jurors' obligation to apply a heightened credibility analysis to the testimony of the Witness. See id.  Although it appears that Petitioner would prefer for the trial judge to instruct the jurors that the Witness "provided the jury with an incorrect, if not perjured, account of what happened," Pet., Addendum II at 2-3, and "was a person without conscience," Petitioner has no federal right to such instructions.  The phraseology employed in the jury instructions provided by Petitioner's trial judge did not "lift the burden of proof on an essential element of an offense as defined by state law." Smith, 120 F.3d at 416.  To the contrary, the state courts found that the phraseology used by Petitioner's trial court was well in line with Petitioner's constitutional rights.

> The trial court record makes abundantly clear that the jury in the case was well aware that [the Witness was] a key witness who had admitted to being a co-perpetrator, [and that the Witness] was a criminal who negotiated a plea bargain conditioned upon his truthful testimony in [Petitioner's underlying criminal case].  Unfortunately for [Petitioner], the jury evidently regarded that testimony as credible.  So did [the trial court judge].

16

<u>State v. Koonce</u>, A-3786-96T4 (N.J. Super. Ct. App. Div. Apr. 22, 2005). Therefore, Petitioner's Ground Four challenge is without merit and should be denied. <u>See</u> <u>Neder v. United States</u>, 527 U.S. 1, 8-11 (1999); <u>Smith v. Horn</u>, 120 F.3d at 416-17 (3d Cir. 1997).


## II.  <u>Claims Attacking Petitioner's Sentence</u>

Petitioner's Grounds Seven, Eight and Nine relate to Petitioner's sentence and read as follows:

> The [trial] court misapplied the facts in finding that aggravated factor N.J.S.A. 2C:44-1(a)(1) ("The Role of the Defendant") was present in the case.

Pet., Addendum II at 10 (Ground Eight).

> The imposition of a life sentence with thirty (30) years of parole ineligibility . . . was disparate and represents an abuse of discretion by the sentencing court.

<u>Id.</u> at 9 (Ground Seven).

> The sentence imposed on Count Three was disparate.

<u>Id.</u> at 12 (Ground Nine).

It appears that Petitioner believes that he was subjected to disparate treatment because Petitioner's trial judge sentenced Petitioner to life imprisonment with a 30-year period of parole ineligibility, while sentencing Petitioner's two co-defendants to thirty year sentences (with thirty years of parole ineligibility).[9]

---

[9]

Petitioner's Petition does not emphasize the fact that another of Petitioner's co-defendants was sentenced to life in prison without parole. Although Petitioner does not expressly state it,
(continued...)

See id. at 10-12.  Petitioner further states that the sentencing judge unduly found that Petitioner's "role in the[] events [underlying the criminal conviction was major] and . . . in all likelihood [these events] would never have occurred without [Petitioner's participation]," id. at 9-10, since Petitioner believes that the facts did not paint a picture portraying Petitioner's role as pivotal.  Id. at 9-12.  Petitioner's contentions are without merit.

As explained supra, since Petitioner's contentions are based on state law, such contentions are not subject to review by this Court because "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause," Johnson, 117 F.3d at 110, and "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith, 120 F.3d at 414; see also Marshall, 307 F.3d at 64; Siers, 773 F.2d at 45; Smith, 768 F.2d at 71, 73. Because of the state-law nature of the sentencing process, the sentencing court has broad discretion in imposing a sentence, and the legality of a sentence is a question of state law. See Chapman v. United States, 500 U.S. 453, 465 (1991); Gryger v. Burke, 334 U.S. 728, 731 (1948); Jones v. Superintendent of Rahway State

_____

[9](...continued)
this Court surmises that Petitioner's dissatisfaction is grounded on Petitioner's comparison of Petitioner's sentence to the shorter, i.e., thirty year sentences, rather than to the "life in prison without parole" one.

Prison, 725 F.2d 40, 42-43 (3d Cir. 1984).[10]   "[A] person who has

been . . . convicted is [subject to], and the court may impose,

whatever punishment is authorized by statute for his offense, so

long as that penalty is not cruel and unusual . . . and so long as

the penalty is not based on an arbitrary distinction that would

violate the Due Process Clause of the Fifth Amendment."  See

Chapman, 500 U.S. at 465 (citations omitted).

     Since (1) Petitioner does not allege that his sentence was

arbitrary in violation of Petitioner's constitutional rights, and

(2) the application of state law to Petitioner's sentence was found

reasonable by the state court, which observed that

> [t]he judge who tried the case gave specific reasons for
> imposing a life sentence on [Petitioner] while
> [Petitioner's] co-defendants . . . received only thirty
> years . . . .  [T]he judge noted that [Petitioner] was
> the one who "devised the plan" to rob [the victim, and
> Petitioner] was the one who knew and identified [the
> victim's girlfriend] upon her return home for the
> purposes of gaining entry to the [victim's] apartment and
> "drew a gun" on [the victim's girlfriend].  And given

---

[10]
     In Gryger v. Burke, 334 U.S. 728, 731 (1948), the Supreme
Court rejected a challenge to a sentence by stating:

> [Federal courts] are not at liberty to
> conjecture that the trial court acted under an
> interpretation of the state law different from
> that which [federal courts] might adopt and
> then set up our own interpretation as a basis
> for declaring that due process has been
> denied. [Federal courts] cannot treat a mere
> error of state law, if one occurred, as a
> denial of due process; otherwise, every
> erroneous decision by a state court on state
> law would come here as a federal
> constitutional question.

> [Petitioner's] involvement in the crime, his prior record
> (including his eligibility for persistent offender
> status) and his commission of these crimes while on
> parole, [the State Court] cannot find the life sentence
> [improper,]

State v. Koonce, A-3786-96T4, at 4-5, this Court has no mandate to second-guess the State court's decision as to the application of State law to Petitioner's sentence. See Neder, 527 U.S. at 8-11; Smith, 120 F.3d at 416-17. Therefore, Petitioner's Grounds Seven to Nine challenges will be denied.


## III.  **Claims Based on Prosecutor's Summation**

Petitioner's Ground Five challenge is based on Petitioner's contention that "[t]he prosecutor's summation improperly highlighted [Petitioner's] failure to testify during the trial." Pet., Addendum II at 7.  Specifically, Petitioner claims that

> [w]hat the prosecutor was really saying when she reminded
> the jury that [Petitioner] had no "obligation to offer a
> defense" became apparent in the next sentence when she
> stated that the jury had the right to consider evidence
> from "all source[s,]" and that the concept of reasonable
> doubt [was] not a "shield" under which [Petitioner] can
> hide from the collective evidence.

Id.  Petitioner maintains that "[t]hese comments impli[ed] that [Petitioner was] under an obligation to testify, and that [by] exercis[e] of his Fifth Amendment right, he . . . depriv[ed] the jury of a source of information." Id.  Petitioner's personal opinion, however, does not amount to a constitutional claim.

The actual statement made by the prosecutor reads as follows:

> When you look at the proofs before you, you don't look at them in a vacuum.  You look at what the testimony of [the victim's girlfriend] tells you about the testimony of [the Witness], tells you about the testimony of [another witness], tells you about the testimony of the physical evidence.  And . . . , as the Court told you, the defense has no obligation to offer a defense, to open, to ask a question, but if they do choose to do so in the course of trial, it is subject to your scrutiny.  A standard of law which recognizes proofs from all sources and expects that you will consider them as you indicated through your oath you will.  A standard[,] which is not a scientific standard of proof, and is not a law of proof, is a shield behind which a defendant can hide from the collective evidence against him.

Ans., Ex. 8T108-19 to 8T109-9.  Respondents are correct in their assertion that the prosecutor's reference to "all sources," as well as her statement that "the defense has no obligation to offer a defense" cannot be taken out of the actual context, see Ans. at 18 ("A reviewing court should not strain to characterize remarks so as to cast doubt on a prosecutor's intentions in making them," citing Donelly v. DeChristoforo, 416 U.S. 637, 644-47 (1974)), and Petitioner cannot turn these prosecutorial phrases into Petitioner's version of "implied instructions" to the jury that, "by exercis[ing] of his Fifth Amendment right, [Petitioner]. . . depriv[ed] the jury of a source of information." Pet., Addendum II at 7.  Distilling principles established by the Supreme Court, the Third Circuit counsels that a court reviewing claims of improper prosecutorial remarks during summation "must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of

21

the curative instructions, and the quantum of the evidence against the defendant." <u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001). Viewed in their entirety, as well as in light of other factors listed by the <u>Moore</u> Court, the statements made by the prosecutor during her summation did not violate Petitioner's rights.[11]   The statements made merely (1) summarized the evidence available and invited the jurors to evaluate the evidence interrelatedly, and (2) repeated to the jury the judicial comments with respect to Petitioner's right not to testify.   <u>See</u> Ans., Ex. 8T108-19 to 8T109-9.

Moreover, in <u>United States v. Robinson</u>, 485 U.S. 25, 32 (1988), the Supreme Court clarified that a prosecutorial statement to the effect that the defendant could have explained to the jury his story does not violate the right against self-incrimination if the prosecutor responds to an argument made by defense counsel. Specifically, the Court held:

> Where . . . the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege.

-----

[11]   As the State court noted addressing this issue, "[n]o objection was raised by [Petitioner] to the prosecutor's summation . . . , and [the state court] find[s] no plain error warranting reversal." <u>State v. Koonce</u>, A-3786-96T4, at 4-5 (N.J. Super. Ct. App. Div. Jun. 15, 1999).

22

Robinson, 485 U.S. at 32.  In Petitioner's case, the prosecutorial comments were a response to the following argument by defense counsel:

> [Petitioner] had nothing to do with this [crime] and when he entered his plea of not guilty to [his] charges, that's what [Petitioner] said.  I don't know who was involved in that but it wasn't [Petitioner].  That's all. It's as simple as that.  So[,] when [the prosecutor] asks you [Petitioner was charged with the crime,] you [members of the jury] just say [that Petitioner's counsel] gave a pretty good answer as to why[the law enforcement was] dealing with somebody [whom] nobody wants to get close to.

Ans., Ex. 8T46-2 to 8T46-11.

Since Petitioner's counsel seemingly asserted that the trial produced no evidence implicating Petitioner, the prosecutor reasonably responded by (1) drawing the jury's attention to the evidence produced during the trial, and (2) clarifying the relationship between various pieces of evidence.  See Robinson, 485 U.S. at 32.  These prosecutorial remarks were especially proper in light of the following excerpt from the trial judge's curative jury instructions:

> [Members of the jury,] you must determine the facts from all of the evidence that has been presented during the trial. . . . [But] no burden with respect to proof is imposed upon [Petitioner].  [Petitioner] is not obligated to prove his innocence. . . . Now, [Petitioner] in this case ha[s] chosen not to be [a] witness[].   It is the constitutional right of [Petitioner] to remain silent. I charge you that you are not to consider for any purpose or in any manner in arriving at your verdict the fact that [Petitioner] did not testify[,] nor should that fact enter into your deliberations or your discussions in any manner or at any time.  [Petitioner] is entitled to have the jury consider all of [the] evidence[,] and he is

> entitled to the presumption of innocence, even if he does
> not testify as a witness.

Ans., Ex. 9T5-25 to 9T12-1.  In fact, the Appellate Division
concluded similarly when the Court noted that:

> [H]ere the prosecutor's comments in summation were based
> on evidence developed at trial . . . .   The prosecutor's
> summation drew reasonable inferences from the evidence
> presented . . . and did not amount to prosecutorial
> misconduct.

State v. Ricks, A-4116-96T4 (N.J. Super. Ct. App. Div. June 15,
1999) (accompanying case addressing the appeal of Petitioner's co-
defendants and incorporated by reference in State v. Koonce, A-
3786-96T4, at *3 (N.J. Super. Ct. App. Div. June 15, 1999)).
Therefore, Petitioner's Ground Five challenge is without merit and
will be denied.


IV.  **Claims Attacking the Jury Verdict**

In his Ground Six, Petitioner asserts that "the verdict was
against the weight of the evidence."  Pet., Addendum II at 19.
Specifically, Petitioner contends that the evidence was
insufficient to convict him because the Witness testified falsely.
Id. at 21-22.

A sufficiency of the evidence claim is governed by Jackson v.
Virginia, 443 U.S. 307, 318 (1979).  In Jackson, the Supreme Court
determined that, "in a challenge to a state criminal conviction
brought under 28 U.S.C. § 2254 - if the settled procedural
prerequisites for such a claim have otherwise been satisfied - the

24

applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial *no rational trier of fact could have found proof of guilt beyond a reasonable doubt*." Id. at 324 (emphasis supplied). A federal habeas corpus court "faced with a record of historical facts that supports conflicting inferences [must] presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and [to] defer to that resolution." Id. at 326. The Court emphasized that "the standard . . . does not permit a court to make its own subjective determination of guilt or innocence." Id. at 320, n. 13.

In this case, Petitioner argued on direct appeal that the jury's verdict was against the weight of evidence. The Appellate Division ruled that, given that the credibility of the State's witnesses was the primary issue, the jury was clearly at liberty to believe them. See State v. Koonce, A-3786-96T4; see also State v. Ricks, A-4116-96T4 (N.J. Super. Ct. App. Div. June 15, 1999). Accordingly, the Appellate Division affirmed. See id. Since the Appellate Division's adjudication of Petitioner's sufficiency of the evidence claim was not contrary to, or an unreasonable application of the Supreme Court holding in Jackson v. Virginia, Petitioner is not entitled to habeas relief on Ground Six.

25

## V.   Claims Alleging Ineffective Assistance of Counsel

In his Grounds Ten to Nineteen, Petitioner alleges that he was deprived of effective assistance of counsel in violation of his Sixth Amendment rights.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. See id.  In other words, Petitioner shall state a

26

claim sufficient enough to rebut the presumption of his counsel's competence by proving that Petitioner's representation was: (a) unreasonable under the prevailing professional norms; and (b) not a sound strategy. See Kimmelman v. Morrison, 477 U.S. 365 (1986). Second, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695.

Finally, since the Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, id. at 396, the ineffective assistance of counsel standard of Strickland, 466 U.S. at 686, applies to a claim that appellate counsel was ineffective. See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

It shall be noted, however that, while defense counsel has a constitutionally imposed duty to consult with the defendant about whether to appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing," Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). The

term "'consult' convey[s] a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes," id. at 478, "it is a well established principle that counsel decides which issues to pursue on appeal," Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996), and that appellate counsel is not constitutionally required to raise every nonfrivolous claim requested by the defendant. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000).

### 1. Claims Against Petitioner's Trial Counsel

Ten of Petitioner's Grounds (from Ten to Nineteen, inclusive) are based on or related to Petitioner's claims asserting ineffective assistance of counsel; these claims are set forth in a sporadic fashion, with some Grounds repeating and/or paraphrasing the very same issues. See Pet., Addendum II at 13-33. However, it appears that Petitioner's Ground Ten, making reference to a multitude of matters, constitutes the gist of Petitioner's claims against his trial counsel. The content of the eight pages of the Petition setting forth Ground Ten is repeated in Petitioner's

Grounds Thirteen to Eighteen.[12] These statements enmesh Petitioner's allegations of ineffective assistance of counsel with statements indicating Petitioner's dissatisfaction with the post-conviction relief court.

All of these claims can be roughly subdivided into five groups:

(A) "Trial counsel failed to file a motion to suppress [the Witness'] out[-]of[-]court identification of . . . [P]etitioner . . . , as well as [the Witness'] in[-]court identification [of Petitioner]." Pet., Ground Ten, Addendum II at 13-15; accord id. at 23-26 (Petitioner's Grounds Thirteen[13] and Fourteen).

(B) "[T]rial counsel [chose an] 'unreasonable' theory of the case[] that the jury should acquit . . . [P]etitioner because

---

[12]

Petitioner's Grounds Eleven and Nineteen challenge the actions of appellate counsel. Petitioner's Ground Twelve (attacking the decision of Petitioner's post-conviction relief court to dismiss Petitioner's claims as barred by the state law) is not viable in its entirety since § 2254 provides relief for violations of the Constitution, not violations of state law or state court procedural rules. See Estelle v. McGuire, 502 U.S. 62 (1991).

[13]

Another aspect of Petitioner's Ground Thirteen (challenging the decision of Petitioner's post-conviction relief court to deny Petitioner's petition for post-conviction relief) does not present a challenge cognizable under § 2254 since the decision of Petitioner's post-conviction relief court did not result in Petitioner's conviction or sentencing. See Coady v. Vaughn, 251 F.3d 480 (3d Cir. 2001) (stating that § 2254 challenges are limited to the issues of conviction, sentence, execution of the sentence, administration or revocation of parole, or judgment of confinement).

[the Witness] was lying about . . . [P]etitioner['s involvement in the crime, and that the crime was committed by someone else.  This theory] was without justification . . . and contrary to any reasonable and intelligent assessment of the facts [because P]etitioner had a viable and credible misidentification claim [since the Witness was] the sole witness to implicate [P]etitioner." Id. Ground Ten, at 15-16; accord id. at 25-26, 30-32 (Petitioner's Grounds Thirteen and Seventeen).

(C)  "[T]rial counsel failed to object to [(a)] the introduction into evidence of the photo . . . depicting . . . [P]etitioner in a 'mug shot' wearing an orange prison jumpsuit," and (b) to related instructions with respect to the identification of Petitioner.  Id. Ground Ten, at 17; accord id. at 27, 29 (Petitioner's Grounds Fifteen and Sixteen).

(D)  "[T]rial counsel . . . fail[ed] to move for severance [of P]etitioner's case [from those of Petitioner's] co-defendants."  Id. Ground Ten, at 19; accord id. at 26 (Petitioner's Ground Eighteen).

(E)  "[T]rial counsel failed to [capitalize on the Witness'] statement [made during the Witness' plea bargain and indicating that the participants in the crime] knew all about [the victim's] whereabouts and activities."  Id. Ground Ten, at 20.

A.   <u>Claims Attacking Trial Counsel's Strategic Choices</u>

Three groups of the above-listed claims (that is, group (B), (D), and (E) that attack: (1) the trial counsel's theory of the case, (2) means to discredit the Witness, and (3) the decision not to seek severance of Petitioner's case) represent Petitioner's discontentment with his trial counsel's strategy.

However, Petitioner's dissatisfaction and second-guessing are not relevant to Petitioner's Sixth Amendment rights, since Petitioner can overcome the presumption of his counsel's competence only by proving that Petitioner's representation was (a) unreasonable under the prevailing professional norms, and (b) not a sound strategy.   See <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986).

> Moreover, where it is shown that a challenged action was, in fact, an adequately informed strategic choice, [the federal courts] heighten [their] presumption of objective reasonableness and presume that the attorney's decision is nearly unchallengeable. [Furthermore,] the inapplicability of these presumptions (because, for example, the attorney was ignorant of highly relevant law) does not . . . automatically mean that an attorney's performance was constitutionally inadequate [since the federal court will] still ask whether, in light of all the circumstances, the attorney performed in an objectively reasonable manner.

<u>Bullock v. Carver</u>, 297 F.3d 1036, 1051, <u>cert.</u> <u>denied</u>, 537 U.S. 1093 (2002); <u>see</u> <u>Thomas v. Varner</u>, 428 F.3d 491, 500 (3d Cir. 2005) (adopting the standard enunciated in <u>Bullock</u>).

In the case at bar, the record unambiguously reveals that Petitioner's counsel's tactical choices were well informed and well grounded.   In fact, the Appellate Division expressly stated that,

31

had Petitioner moved for severance, severance likely (1) would not have been allowed, and (2) would not have generated any exonerating evidence for Petitioner.  See Ans., Ex. Q at 5-6 ("[Petitioner's] argument as to what inferences or witnesses might have been available in a separate trial are purely speculative").  Therefore, Petitioner's trial counsel, having no realistic opportunity to sever Petitioner's case from those of Petitioner's co-defendants, acted reasonably when the counsel decided to act jointly with the co-defendants' attorneys in order to attempt to discredit the Witness (who testified against Petitioner *and* Petitioner's co-defendants).  Cf. United States v. Khedr, 87 Fed. Appx. 218 (2d Cir. 2004) (finding that petitioner was not denied effective assistance of counsel since petitioner could not have been prejudiced by counsel's decision not to move for severance because, had his counsel submitted this motion, the court would not have erred in denying it); Lawson v. Caspari, 963 F.2d 1094, 1096 (8th Cir. 1992) (holding that counsel was not ineffective where counsel presented a theory of the case by raising credibility questions regarding the state's witnesses); Williams v. Kemp, 846 F.2d 1276, 1281 (11th Cir. 1988) ("any decision not to pursue alternative defense theories [is] tactical").  While Petitioner might qualify his counsel's strategic choices as "unreasonable," Petitioner's perspective is of no relevance to the Strickland test.

> [If,] in his ineffective assistance claims, [the petitioner] argues that his trial counsel presented [an]

> implausible . . . theor[y] of the crime, [for instance,]
> a theory that there was another [unidentified person who
> committed the crime, and] these theories, [the
> petitioner] contends, 'insulted the jury's intelligence'
> and were 'perceived by the jury as utter idiocy[,]'
> [such] claims . . . lack merit [since] these are matters
> of defense counsel's trial strategy. See Strickland, 466
> U.S. at 687.    Given the evidence presented by the
> prosecution (including an eyewitness identification),
> trial counsel quite understandably sought to present
> alternate theories of the case that could potentially
> exonerate his client. Furthermore, what may have seemed
> implausible to [the petitioner] may have seemed plausible
> to his counsel at that time.    In any event, the
> introduction of th[is] theor[y] does not meet the
> Strickland standard of an error "so serious that counsel
> was not functioning as the counsel guaranteed [to] the
> defendant by the Sixth Amendment." See id.

Kirby v. Senkowski, 141 F. Supp. 2d 383, 403 (S.D.N.Y. 2001).

Therefore, this Court finds that Petitioner failed to meet his burden of showing that the strategic choices made by Petitioner's counsel (with respect to either the theory of the case or the means to attack the Witness' credibility) were unreasonable and unsound. Accordingly, these grounds for a writ of habeas corpus will be denied.

### B.   Admission of Petitioner's Photo Array

Petitioner argues that he was denied a fair trial when the trial counsel did not object to a photograph of Petitioner wearing orange prison garb being submitted to the jury.

This issue raised by Petitioner appears two-fold, that is, it raises the preliminary question of Petitioner's due process right to a fair trial and the ensuing question of Petitioner's right to

effective assistance of counsel.  The threshold due process aspect of the issue was addressed by the Superior Court of New Jersey, Appellate Division, during its evaluation of a case virtually identical to that of Petitioner.  See State v. Peace (reproduced in Peace v. Hendricks, 2005 U.S. Dist. LEXIS 32891, at *14-17 (D.N.J. Dec. 12, 2005)), aff'd, 164 N.J. 191 (2000).  In Peace, the Appellate Division stated that, where

> [a] photographic array . . . [is] submitted into evidence consist[ing] of front and side view mug shot style photographs[, and] defense counsel [does] not object, [but the] trial judge g[ives] instructions that] such photographs come into the hands of law enforcement from a variety of sources unconnected with criminal activity, . . . mug shots are generally admissible, as long as they are in as neutral a form as possible, despite the inference of prior criminal activity that they raise. . . .  In State v. Burton, 309 N.J. Super. 280, 288-89 (App. Div.), certif. denied, 156 N.J. 407 (1998), [the Appellate Division] found that[, while] the trial judge should not have allowed a photo array into evidence where the pictures depicted the individuals in orange jail clothing [(]notwithstanding the fact that identification was in issue[),] . . . the error [is, nonetheless,] harmless. [See] State v. La Porte, 62 N.J. 312, 318 (1973).

Id.  Likewise, Petitioner's post-conviction relief tribunal observed that,

> [i]t is without question that the jury knew the [Petitioner and his co-defendants] were arrested for the homicide of [the victim] as they were now on trial for the crime.  Thus, in the minds of the jurors it could have been no surprise that [Petitioner] was wearing orange garb in the photo array, which was only used for identification purposes by [the Witness,] following [Petitioner's] arrest for the crime at hand.

Ans., Ex. N, Appx.

Federal courts must afford the states deference in its determinations regarding evidence and procedure. See Crane v. Kentucky, 476 U.S. 683, 690 (1986). It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations omitted), cert. denied, 522 U.S. 1109 (1998). However, evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial." Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991) (citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir. 1994), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228 (1941) (holding that state court's evidentiary rulings may form the basis for habeas relief when such rulings "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990)) (other citations omitted). The Supreme Court has further stated that "an otherwise

35

valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). An error is not harmless if "it aborts the basic trial process or denies it altogether." Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

The record of the case at bar indicates that the trial court's admission of the photo array, accompanied by the trial judge's limiting instruction (stating that the jury should not presume that the police had a photograph in police files because "[t]here are many reasons why the police may have a citizen's photograph which have nothing to do with crime," Ans. Ex. 9T20-15 to 17), was not an error of a constitutional dimension since the record demonstrates that the trial process was fundamentally fair. Therefore, this Court finds that introduction of a photograph depicting Petitioner wearing orange garb into evidence did not violate Petitioner's due process right to a fair trial.

With respect to the ensuing issue of Petitioner's Sixth Amendment rights to effective assistance of counsel, this Court finds that no violation of Petitioner's rights could have taken place since the applicable state law on the matter, namely, State v. Burton, 309 N.J. Super. at 288-89 (1998), did not exist at the time of Petitioner's 1997 trial, thus supplying Petitioner's trial

36

counsel with no grounds for objections.  Since, in light of all the circumstances at the time, an objection to a photograph of defendant wearing orange garb was not an expected part of professional legal assistance, Petitioner cannot "show that counsel's representation fell below an objective standard of reasonableness."  <u>Strickland</u>, 466 U.S. at 687-88, 690. Accordingly, this claim will be denied.

### C.   <u>Claims Related to Motion to Suppress</u>

Finally, in his (A) group of claims, Petitioner contends that his trial counsel unreasonably failed to move for suppression of the Witness' in-court and out-of-court identification of Petitioner.  This Court presumes that Petitioner refers to the motion based on the holding of <u>United States v. Wade</u>, 388 U.S. 218 (1967) (stating that, where an accused was not represented by counsel in post-indictment line-up identification procedure, accused is entitled to hearing to determine if the identification procedure was so tainted that in-court identification should be suppressed).  The Supreme Court expressly clarified that a <u>Wade</u> hearing is not required in every case, <u>see</u> <u>Watkins v. Sowders</u>, 449 U.S. 341, 349 (1981).  With respect to an ineffective assistance claim based upon failure to move to suppress identification evidence, a petitioner must show

> that he likely would have prevailed on the suppression
> motion and that, having prevailed, there is a reasonable

> likelihood that he would not have been convicted.
> [Therefore, the federal court,] in order to determine
> whether a motion to suppress would have been granted, .
> . . must determine (1) whether the identification process
> was unduly suggestive and, if so, (2) whether the
> totality of the circumstances nonetheless render[ed] the
> identification reliable.

Thomas v. Varner, 428 F.3d 491, 502-03 (3d Cir. 2005) (citing,

inter alia, Neil v. Biggers, 409 U.S. 188 (1972)).  Consequently,

counsel's performance cannot be deemed deficient in failing to seek

a Wade hearing where: (1) there was no substantial likelihood that

had trial counsel requested a Wade hearing, it would have been

granted, or that if a hearing was held, the court would have

excluded testimony at trial concerning the out-of-court

identifications; and (2) counsel elected to discredit the witness'

identification of defendant on cross-examination, since such

actions by trial counsel (1) qualify as a reasonable strategy, and

(2) are accorded a strong level of deference. See Van Valen v.

Moore, 2006 U.S. Dist. LEXIS 2343, at *22-23 (D.N.J. Jan. 19, 2006)

("Strategic choices made after thorough investigation of law and

facts relevant to plausible options are virtually unchallengeable")

(quoting Strickland, 466 U.S. at 690-91.)

Since, in the case at bar, the record reveals that the

Witness' identification of Petitioner was not tainted by

suggestiveness,[14] the trial court would have no reason to hold a

_____

[14]

Since Petitioner's claim could be effectively reduced to the
statement that the Witness could not have been able to identify
(continued...)

38

_Wade_ hearing.   _See_ Ans., Ex. 6T172-13 to 174-12.   Therefore, Petitioner's trial counsel acted reasonably by not making a meritless motion, _see Jones v. Barnes_, 463 U.S. 745, 750-754 (1983), and instead vigorously cross-examining the Witness.   _See_ Ans., Ex. 6T167-11 to 178-4.

Counsel was not ineffective simply because counsel could not discredit the Witness during cross-examination.   Therefore, this Court concludes that Petitioner has not demonstrated by a reasonable probability that the outcome of the proceedings would have been different but for his trial counsel's failure to request a _Wade_ hearing.   Therefore, this claim will be denied.

### 2.   _Claims Against Petitioner's Appellate Counsel_

In his Grounds Eleven and Nineteen, Petitioner appears to assert that he had "ineffective assistance of appellate counsel" because appellate counsel did not challenge Petitioner's trial counsel's decision not to move for a _Wade_ hearing.   This claim is without merit.

---

[14](...continued)
Petitioner because of Petitioner's limited acquaintance with the Witness, it appears to this Court that Petitioner confuses "suggestiveness of identification process" with "reliability of resulting identification."   The issue of reliability has no relevance to a _Wade_ hearing, since this issue is decided by the jury when the jurors consider what weight should be allocated to a particular piece of evidence.

Since the record indicates that the Witness' identification of Petitioner was not tainted by suggestiveness, and Petitioner's trial counsel vigorously cross-examined the Witness, Petitioner's appellate counsel did not prejudice Petitioner's appeal by deciding not to pursue this weak claim, even though it appears that Petitioner would have preferred otherwise.  <u>See</u> <u>Sistrunk</u>, 96 F.3d at 670; <u>see</u> <u>also</u> <u>Jones</u>, 463 U.S. at 751.  Petitioner's appellate counsel acted properly when the counsel "select[ed other claims for the purpose of Petitioner's appeal] in order to maximize the likelihood of success on appeal." <u>Smith v. Robbins</u>, 528 U.S. at 288.  The fact that these selected claims did not produce the result desired by Petitioner is not indicative of ineffectiveness of Petitioner's appellate counsel.  Accordingly, this claim will be denied.

<u>**CONCLUSION**</u>

After thoroughly examining the Petition and the pertinent state record, this Court determines that Petitioner's Petition lacks merit and, therefore, will be denied in its entirety. Petitioner's motion for an evidentiary hearing will, therefore, be dismissed as moot.

<u>**Certificate of Appealability**</u>

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a

40

constitutional right" under 28 U.S.C. § 2253(c)(2). <u>See</u> <u>Miller-El</u>
<u>v. Cockrell</u>, 537 U.S. 322 (2003).

    An appropriate Order accompanies this Opinion.




                       /s/ Jose L. Linares
                       United States District Judge

Dated: September 22, 2006